The Honorable Judges of the United States Court of Appeals for the Third Circuit. Oday, Oday. All persons having business with the Honorable United States Court of Appeals for the Third Circuit are marked in broad name with your attention for this court is now in session. Godspeed to the United States and this honorable court. Please be seated. Good afternoon. We have two cases for this afternoon. And the first is Davis v. Phelan, Hallahan and Diamond. Mr. Deutsch and Goodkind. Whenever you're ready. Good afternoon, Your Honors. Adam Deutsch on behalf of the appellant, Mr. Davis. I'd like to reserve three minutes for rebuttal, please. You sure can. May it please the court. This is a case about abusive debt collection practices pursued by a sophisticated debt collection company. Phelan took the precise type of actions Congress sought to prohibit through enacting the FDCPA. The initial section of the statute states its purpose, which is to protect consumers, to forbid actions that are abusive and cause injury, to encourage the use of effective non-abusive collection practices. What was the injury here? Yeah, I was going to say, let's work backwards.  Absolutely, Your Honors. The injury here is that Mr. Davis' information, his sensitive personal information as to the status of the debt, his address, the amount of the debt, who the servicer is, all that information is floating right now in the public realm. One of the critical things... And when you say it's out floating in the public realm, in your complaint, do you allege anywhere that anybody has actually seen this information? Your Honor, I understand that the district court read the complaint to not see that there, and I can understand in a post-spokio decision suggesting that the pleadings were not sufficient enough in that regard, in which case my client should have been given the opportunity to amend the pleadings. I believe that the statute does, that the complaint does allege exactly what the statute requires. Have you in any way indicated how you would amend the pleadings if so permitted to do so? I have not, Your Honor. That question did not come up. Well, it's something that you could always do to say, look, this is what I would plead if I could do so, and you've never done that. That is correct, Your Honor. That was not done in part because there was one motion, a motion to dismiss, that was immediately converted to a summary judgment motion. The opportunity was not provided. I understand that it could be put into appellate papers, and I could advise the court now that if given the opportunity to amend, it certainly would. But you were aware that the motion was going to be treated as a summary judgment motion because you so pled, you so answered, right? Your Honor, as the attorney for the plaintiff, I found myself in a difficult position, and the plaintiff found himself in a difficult position. Do you gamble and not respond when somebody puts additional evidence in the record, or do you take a chance and do you respond to it and encourage the court not to consider the information but acknowledge that if they do, it needs to apply a summary judgment standard, and that's what I had done in this case. You can file a motion and say, I need the opportunity for discovery, right? I mean, the rules give you that option. You didn't do that, but you responded. I mean, I understand it might have not been the position you would have sought and wanted, but there are tools for you if you think the court is moving before it should. And you need help, those are available to you, but you didn't indicate that in any way to the district court, did you? I feel that the way the opposition was drafted, it indicated that I believe the court should disregard, but I did not explicitly make a motion or anything to that regard, Your Honor. That is correct. Can I ask you a question? You fault the other side for not responding to the Charzena case. I'm not sure I'm saying that case name right, but you know, it's the Judge Rebrano case from the Eastern District of Pennsylvania from 2015. But there's another case by that same fine district court judge called Straus, which was mentioned in the briefing by your opposing counsel, which you did not seem to address either. And they pick it up first in their answering brief at page 12. I'm wondering if you would take a crack at that opinion now. Are you familiar with the case? I would need to shift through the notes and pick up on it quickly, Your Honor. Can Your Honor pose a specific question as to Straus? Well, sure. The position that they take when they are citing the Straus opinion on page 12 is as follows. Straus held that a debt collector's letter addressed only to the plaintiff consumer and sent to him, although it actually should say her, in that case it was a woman, and sent to her at her parents' address were not communications with the third party. And that is what it held. The court looked at that and said it was addressed to Alyssa Straus. It was sent at the parents' address, but it was to her, and so it was not a communication with any third party. They say that's exactly the case here. It was addressed to Albert Davis. It might have been sent to an address other than his home address, but it was not a communication with any third party, Straus tells you that. So I want you to respond to that. And it was an address where his ex-wife was living. So, Your Honor, the interesting thing is there is no ex-wife. I don't know where that came from the record. Mr. Albert Davis and Barbara Davis are still married. Oh, okay. Well, then even better. I thought she was living in Clauster, New Jersey at the time. No, she's not. So I don't know where that came from either. Okay. But let me answer. Yeah, but that's great. I'm happy that they're still together. That's a good thing. But as to this, let me answer Judge Jordan's question. With regard to Straus, we have the same situation in Siegel v. National Action Financial Services where the letter, and that was in the record as well, where the letter was sent to a stepson's house. And, you know, those are situations where the debtor clearly has an affiliation with the address. And I think that's a very important distinguishing fact from the record here. And the other thing is that the FDCPA also provides for an exception to communicate with, for example, where there's someone who's a minor, you can communicate with the parent. You can also communicate with the spouse, as Judge Roth indicated. And so those are all, you know, when it's a family relationship, we certainly have those situations. What I do believe the key question here is the court below incorrectly framed the question as whether a letter seeking to which the third party never receives violates the FDCPA. And that's the wrong question because nobody in this room knows what happened to the letter sent by regular mail. Okay. When you say nobody knows what happened, that's a great point. On whom should the ambiguity fall? You say, well, the New Jersey rules of civil procedure say you presumably received it, which prompts me to wonder, one, why would New Jersey procedural rules about service of process be what we would look to in answering the question of where ambiguity would fall in an instance like this? And two, what do we, even if we assume it was received at that residence, how does that answer the question posed by Strauss, which is if it's addressed to the correct person, it's not a communication with the third party? Why would we assume that it's open and read by a non-addressee and not just forwarded or thrown away? And I have a couple of responses to that, Your Honor. First, I do understand the argument has been made and was really included in Judge Cougar's decision, which is to say if a letter comes to your house but it's addressed to someone else, it would be, in fact, illegal to open it. The reality is that regulation exists because people open other people's mail. And so in this situation, the question for the court should be fine. By accident, maybe. Why should we presume that people are, you know, why should we presume to the extent there's ambiguity, why would we presume that a non-addressee would open the mail instead of assuming that they would obey the law? There doesn't need to be a presumption that they absolutely would. But I do believe that the question is must the communication be actively received by the targeted recipient? The FDCPA, the court in this circuit and other circuits have been driven to adopt objective standards that focus on the conduct of the collector, not the subjective reaction of the debtor or in this case the unknown third party who is on the other end in Kloster or in Brockton. And unless we know definitively, you know, the court needs to give guidance in this regard because should it be the plaintiff's burden in this case to go and seek finding these unknown third parties and find out what their subjective reaction was when they received the mailing? Not their subjective reaction, Mr. Deutsch, but that they had any reaction because they opened the mail. That's the question. You want us to presume and you've given us a New Jersey code section rule about service of process. You want us to assume that a non-addressee opened the letter. And that's what I'm trying to get you to engage with because Strauss seems to imply or not more than imply, it seems to say that you send the letter to an addressee at a different address than the addressee's address. It's not a communication with a third party because it's still not being, there's no attempt to communicate with a third party. It's still an attempt to communicate with the correct party even if it's misdirected. And it doesn't seem to say assume that it's been opened by some third party. That's why I'm trying to get you to engage with Strauss. Understood, Your Honor. Your Honor, this is not an intent to engage with the proper party. They knew exactly how to reach Mr. Davis and chose to send this to an unrelated address anyhow. I believe that this is more similar to the Jarzana and the Berg case and also Cordes v. Frederick J. Hanna, which is 789 F. Sup 2D 1173. You say that they knew how to reach Mr. Davis, but is that on the basis that he'd been involved in previous litigation? And the owner of the debt knew exactly how to reach him. Because the previous litigation he was represented by another attorney, wasn't he? Your Honor, my prior firm was his, I was his attorney in the prior litigation. A different firm. And they knew how to reach us at my prior firm. Okay, so it was a different law firm. I exchanged law firms. Yeah, okay, but it was a different law firm. Than it is currently, yes. Yeah. Not then at the start of the new foreclosure compared to the old one. I'd like to reserve the time for foreclosure. I thought you said earlier that we don't know objectively if the letters that were not returned by regular mail, if they were opened or not opened. Just to correct, Your Honor, we don't know if the letters that were sent by regular mail, period, were returned to Phelan. That's absent from the record. We know that the certified letters were. And Phelan says that they sent these letters by certified and registered mail to comply with the New Jersey statute. But that statute requires letters to be sent by certified and registered mail, return receipt requested. There is no provision authorizing or directing to send by regular mail. There's no justification for the sending of these letters to the unknown third party. That's not the question. That's not, yeah, go ahead. I mean, my question is the certified mail return receipt requested were returned back to the Phelan firm. The two letters, one to Kloster, one to Brockton, were not returned. So we don't know where they are. We don't know if somebody got them and pitched them. We just don't know. So, Mike, isn't the real issue, let's just assume for the moment, somebody other than the wife got the letter. But how can you possibly prove there was an intent to harass, oppress, or abuse Davis? Your Honor, the FDCPA does not require proof of intent in that matter. If Your Honor is referring to subsection D, the question becomes whether sending the notices to an address that was known to be unaffiliated with the debtor and had no realistic chance of reaching the debtor, the only plausible result is for it to have the likelihood of resulting in some sort of harassment, oppression, et cetera, prohibited result from the FDCPA. What are you trying to say about subsection D? Your Honor, subsection D prohibits a debt collector from engaging in any act, conduct, that has the natural consequence of which is to harass, oppress, or abuse any person in connection with the debtor. And that was my question. Is there anything in the complaint that would allow us to infer harassment, oppression, or abuse? Mr. Davis alleges that when Phelan conducted its inquiry, found the addresses had nothing to do with him, and still sent these notices containing personal information about his financial condition to these unknown third addresses, that has the natural consequence of resulting in oppression. The natural consequence of sending a letter that we don't even know who got it, and it says to you all, what, $267,000, that somehow that was with the intent, whoever that third party is, Joe Smith or Barbara Davis, whoever, the intent there was to harass, oppress, or abuse Davis. Your Honor, this is not about intent, but the only natural consequence here was for someone other than Mr. Davis to end up with that letter. Well, now, one of the addresses was non-existent. The Brockton? The Brockton. So we only have one address that even would get any delivery in the first place. And my understanding is that the wife lived there. Now, that's in the briefs. She lived in New Jersey, in a cluster. Yeah. Your Honor, I don't believe that we can assume that the letters sent to Brockton were not delivered to another address in Brockton. We can't assume anything. Well, is that harassment? I mean, that seems to me a little. So if you can't assume anything, how does that equal the natural consequence of which is harassment? Your Honor, when a debt collector sends debt collection notices to an address that it knows has no affiliation with the debtor. Well, that's not an address. I mean, you seem to be imparting total knowledge of where these letters actually went. So we know that one was sent to an address that didn't exist. So if you send a letter to an address that doesn't exist, is that harassment? Your Honor, I would draw the analogy to say that the case law shows that when you leave a voicemail on even an answering machine that is not known. Well, that's like sending a postcard instead of a letter. This is a sealed envelope. Well, a postcard would be its own violation because the statute prohibits use of any postcards. But I do believe in that regard that the information is conveyed, and that's why it comes to the question of does the debtor, and this is a question for the statute interpretation. I mean, the meaning of communication is simply to convey information. It says nothing about understanding, receiving, and interpreting the information. But it does require communication with. And that implies, does it not, or connotes that there actually has been something sent and something received, not just received in the sense of I got a thing, but that there was a message. And when you said we can't assume anything, you are asking us to assume. You're asking us to assume that the non-addressee got it, opened it, read it. You're asking us, even though it's not pled, that we assume those things, right? Because you have to for the idea of communication with to have meaning, don't you? Your Honor, respectfully, I do not. I believe that the statute very strictly defines communication as conveying of information. And I do believe that when we look at the Jarzana case where the court says it doesn't even matter if you listen to it, it's the act of leaving in a violation. And when we look at the Zorban case, part one. This is in the context of a voicemail. Again, like a postcard. This is, well, let me ask you this. This is completely different, but I want to make sure I understand this. Are these two separate bases of liability, the idea of communicating with the third party and the idea of abuse or harassing, oppressive, and abusive conduct, or are these things that have to work together? That is, even if you communicate with the third party, it could be the case that there's no liability because it's not harassing, oppressive, or abusive. Or are those independent? Your Honor, they are independent of each other. One is under subsection D and the other is under C.E.B. So, and you're asserting both, right? Yes, Your Honor. You're saying even if it's not harassing, oppressive, or abusive, we ought to win because it's at least a communication with the third party. Am I understanding you right? Yes, Your Honor. Okay. Yes, and I do believe that the facts here are on par. Although it's a phone call case, I do believe it's on par with the decision in Zortman that was the initial 12B6 motion in Zortman. I understand that they then lost in summary judgment, and that was Judge Kugler's prime example in this case. But if we look at the original decision, I think that's really on point here. Okay. All right. Why don't we get Mr. Goodkind up, and we'll get you back in. Thanks. Thank you, Your Honors. I'm Kenneth Goodkind of the law firm of Flaster Greenberg, and I represent, of course, the affiliate, Phelan Hallinan, Diamond, and Jones. If I could make one point, and you've made many, you've gone over many of the things, so I'm going to be a little repetitious, so I'll try to avoid that. The one factual point I would make is if you would look at the supplemental appendix and page 15, and that is the post office tracking receipt for the Brockton letter. And as Judge Roth pointed out, the letter was undeliverable as addressed. The regular mail was addressed identically. It wasn't delivered to anybody. Assume that's true. There's still the cluster address, and as your opponent makes much of in the briefing and here at the podium today, you had been told by the Postal Service that Mr. Davis wasn't there. So why, having been told by the United States Postal Service he's not there, would you send a letter to that address where you knew he was not? Well, we did have information, and Phelan hired employees in outside litigation services. So when the outfit full spectrum comes and gives you something that just doesn't make any sense. Well, it's not that it doesn't make any sense, Your Honor, because that is the address, and it's noted in Mr. Glitch's paper. That refers to what? Cluster or Brockton? Cluster. Cluster is an address definitely for Mrs. Davis. And the definition of a consumer under 1692CB that we're dealing with includes the spouse. And the point is Phelan was trying to… But she was also a co-mortgagee here too. Right, exactly. My question is why in the world would you send it to Brockton, Massachusetts when there is nothing that we know of, even with six degrees of separation that links Brockton, Massachusetts with this case? Well, we do know because there's a certification of an attorney, Vladimir Palmer, who worked with full spectrum services in setting this up. Full spectrum from its databases, which includes creditors and various things, came up with that address. How does that help you? I mean, you can say, yeah, yeah, we were told by this third party, but the obligation is on you, right? You're the ones that have to decide who you're going to communicate with. And what happens in New Jersey foreclosures, this was a fair foreclosure act notice that Phelan was required to send out before its client could commence the foreclosure against the Davises who hadn't paid their mortgage since 2009. You don't want to get tripped up by having a foreclosure defendant say the notice was no good. So the safe thing to do is you could call it overkill, but it's the prudent thing to do. If you have an address, use it so the debtor does not come back in. You're not still answering my question. 15 Linda Avenue in Brockton, is there an Albert Davis there? Anybody by the name of Albert Davis? Right now, according to the post office, there is not such an address. But when Phelan, if you got information from the post office that said, yes, there is an address. So the answer to my question is no. As far as I know, there is no such address, so therefore there would be no Albert Davis, and that's correct. There's nobody there, though. There's nobody to receive the mail, and the post office confirmed the mail was never sent. So why engage in overkill with regard to something that conceivably could give an arrow in the quiver of the other side to say that you violated the Fair Debt Collection Practices Act? Because Phelan was complying with the Fair Foreclosure Act and didn't want to be in a position where the foreclosure would be upset or overturned because Mr. Davis came in and said it was my address. How can you say it's complying with the Fair Foreclosure Act? What are you relying on? Because I got the act in front of me, and I've been trying to find it since you said it in your brief, and I'm not cluing into what in the Fair Foreclosure Act requires you to send mail to places where the post office has said the debtor is not. Because the places you have to send it to, the first place, and I can give you the statute. Sorry, do you have it? I've got it right here. Okay. It's 2A colon 50-56, 4B. You have to send the letter to the debtor's last known address, and if different to the property. And the information that Phelan received from Full Spectrum Services was a known address reported by a creditor. Did Albert Davis ever live at 15 Linda Avenue in Brockton, Massachusetts? As far as I know, he did not, but it is indicated by the databases that that is a mailing address for him. And that was the last information that Phelan had for a mailing address for him. Give me that cite again. 2A colon 50-56, 4 period, B period. And I read it into the record. Notice of intention to take action as specified in the previous section shall be in writing, sent to the debtor by registered or certified mail, returned, received, requested at the debtor's last known address. Okay. Is there anything there that says, and send it to as many addresses as you think he might be at? Well, the statute, of course, does not say that. Okay. It actually says last known address, right? And that was the last known address because that's the address that came up. Closter and Brockton were the last known addresses? Isn't the magic word here known? The only way that, I don't know if it is a magic word or not, but it is what Phelan knew because that was what was reported to it by full spectrum services. What did full spectrum say with regard to the Brockton, Massachusetts address that gave you an inkling that you should send a letter, a notice to that address? It said the standard procedure, as Mr. Palmer outlined in his certification, is they go through a number of databases, including creditor databases, and this came up as the mailing address, one of the mailing addresses, along with the cluster address for Mr. Davis. And the cluster address is the same address, I think, as you observed, that Mrs. Davis would have got the identical notice at because she's a co-defendant in the mortgage. And one would expect, again, because consumer is also defined to include the spouse, that that would be a good address for him as well. Now, they say that's not her. I'm sorry, who says that? Well, I thought I heard Mr. Deutsch say that the address in New Jersey, the cluster address is not the address for Ms. Davis. Barbara Davis. For Barbara Davis. Maybe I misunderstood that. Yeah, I can describe it. Right? So you found a Barbara Davis who is not the debtor, and you sent a letter to him at that address. I think we may be talking around something here, but let me ask you. Did you guys, did your third party complain, your investigation firm? Did you say, look, if we're liable, they must be liable because we were just following what they said? You didn't do that, did you? No, we did not do that. If I can just point you to the record. Page 49A in the appendix is where the receipts are for the Freedom of Information Act request, and page 50A is actually the one that has Barbara Davis at the cluster address. So it's in the record, and that's the appendix of Mr. Deutsch right there. When you said has Barbara Davis. Yes. A Barbara Davis or the Barbara Davis? I can't tell you absolutely for sure, but it must be because Barbara Davis has never objected. She's never filed anything in the foreclosure to say that that's not her. So wait. Yeah. Your position is we can send mail to all the Albert Davises in New Jersey and all the Barbara Davises in New Jersey, and we can't be liable for that under the Fair Debt Collection Act because we expect all non-Albert Davises, that is, all Albert Davises who aren't this Albert Davis to come in and say something in court, and all the Barbara Davises who aren't this Barbara Davis to come in and say something in court. That's really your legal position? No, not at all. Okay. So you've got a Barbara Davis. You don't know that you have the Barbara Davis, and we're still talking around the point we're trying to get you to address head-on. The point that we need to address head-on is, having been told by the United States Postal Service, Albert Davis is not at these addresses. That you don't dispute, do you? You've got that word from the U.S. Postal Service. That's correct. Okay. Having been told that, are you under any legal obligation, given the Fair Debt Collection Act, to then take care and not engage in, as you put it, overkill, and send letters to people where the government has said, this guy is not? There is nothing in this statute, respectfully, that says that the post office is definitive in the last word. The Fair Foreclosure Act, which I just cited to you, says you have to send it to the last known address. And that's the last known address. That's what I'm struggling with. You keep going to this, the New Jersey law requires it. But if the Postal Service, whose job it is to, in fact, tell you whether there's a known address or not, I mean, that's the government agency's responsibility. If it says he's not there, what in the New Jersey law makes you think that you're responsible to send mail to a place which is not the last known address? Unless you've got someplace better than the U.S. Postal Service. If he's gone off to Honolulu with no address left, it may be the last known address, because there may not be any knowledge of the current address. Didn't the Postal Service give you some information about where they did believe he was? I don't believe they did, Your Honor. You weren't told this Riordan address, the home which is the home you were trying to foreclose on was the address? I don't believe that we received that. Did you know that was the address, because that's where you'd been communicating with him previously? I don't believe Phelan had been communicating. By the way, your question before about who represented who, in the first foreclosure, the 2010 one, Phelan was not involved in that. And I think, as you may know, the law is clear that even if Phelan's client, even if the bank knew, that knowledge is not imputed to anybody else. And Phelan had no contact with Mr. Davis, and five years later had no reason to know one way or the other whether the Denbo firm was at all involved. Isn't by far your strongest argument that no matter what happened with regard to the addresses, the natural consequence here was not to oppress or abuse Mr. Davis? That's correct, Your Honor, and the case law, I believe, is clear in the circuit, that conduct that comes under that has to be oppressive and outrageous. And you see examples, you know, profane language, threats of violence and things like that. It's things of that nature. So my question to you is why not make that argument at the outset? Why didn't I? When you came up here, you're talking about and arguing about whether sending an address to the wrong place is okay or not okay. But on the second prong, the natural consequence of it must be, as you say, egregious or with the attempt to or with the consequence of oppressing or abusing. What evidence do we have of that? What evidence do we have? It's not my burden of proof. That's a softball question. It's not our burden of proof to show any of that, and I think the law is crystal clear on that, that this conduct falls way outside of the examples courts have ever found. If I can make two other points. Well, before you do, I do want to find out from you what I'd ask, Mr. Deutsch, which is because Judge Ambrose just described this as the second prong. Is this a two-prong test, or is 1692CB and 1692D independent bases of liability? They are independent. However, under the FDCPA, if you have a specific statute that violates a specific portion, you don't just add on and pile on another section unless there's another independent ground. The same conduct doesn't violate both sections. It has to be something in addition. But even if this conduct were not oppressive, abusive, et cetera, if it were a communication with a third party under 1692CB, that would, standing in itself, be a basis for liability? If it were. I know you're not admitting that it is. You're fighting that very hard. But if we were to say, no, this is a communication with a third party, does 15 U.S.C. 1692CB stand as an independent basis for liability? Even without oppression. Yes, yes. I would say this. But as you pointed out before, and one of my other key points, is there's a four-letter word here that's very important. That's the word with. If you look at 1692CB as you did, how many times does the word with follow the word communication? It's not a statute that prohibits the sending alone. Congress went out of their way and the cases have gone out of their way. There's the Marks case out of the circuit. There's the Cosmic case in the circuit. There's a new case by Judge Kugler, the Evans case. And they all talk about the third party. It's not a one-way street. You have to communicate with somebody. And these letters, all of them, are addressed only to Albert Davis. There was no attempt by Phelan to communicate with anybody else. As you pointed out, the statutes, the federal statutes, say you don't open anybody else's mail. It's illegal. And there's no evidence here that it happened. It would be we are now 27 months from the sending of the letters. Mr. Deutsch has not come up with a scintilla of probative evidence that anything happened to these letters, that anybody saw them. As you pointed out, under 56D, he had the right, if not the obligation as attorney, to say to Judge Kugler, you know, I need to take some discovery. I need to find out. Today, there is no chance. There is not a scintilla of a chance. Does summary judgment basically solve this? Does summary judgment? Summary judgment. I mean, if summary judgment was appropriately given, do we need to go any further? No, we do not. And I believe summary judgment was appropriately given. Mr. Deutsch had every opportunity, even between the time we filed our brief for summary judgment and to dismiss, to send a letter, to do something, to inquire, perform the normal diligence of an attorney, to try to find out what was going on with letters sent to that address. He did nothing, and as you pointed out, Judge Jordan, he didn't ask to file the motion under 56D. If I can make my two other points very briefly. Let me just ask. You're saying the magic word is with. Very brief. CB says the debt collectors, quote, may not communicate in connection with. That's the first with, but that's not the one you're talking about. The collection of any debt with any person other than the consumer. And so if you send it to a place that Albert Davis doesn't live, then there's a real chance that you could have a communication with somebody. If there's any communication, it's going to be with someone other than Mr. Davis, right? So it's a totally speculative possibility. We were told it was a mail-in address. My question was, if anybody opens that up, it's a communication with anybody other than the consumer, correct? If anybody did so, that person would not be the consumer unless it's the spouse or some other people that the statute says are granted. Of course, if you send it to the debtor and his name and his address, how about if someone else opens it up? Well, but that's not who we're communicating with or intending to communicate with. And it's also, as you remember, it's unlawful. No, but it still makes it a communication. But this letter was not opened by anybody because it was marked by the Post Office as undeliverable. No, no, the certified mail was marked undeliverable. By mail. And the address was the same for both letters. So the letter was never delivered to anybody. As the Duran case points out, you know, communication, there's a kind of poignant example. They pointed out when the FBI is listening in. Was anybody living at Closter at that time, New Jersey? Apparently, that was Barbara Davis, yes. And Full Spectrum doesn't send it every time. A Barbara Davis. A Barbara Davis. No, no, Full Spectrum does check on who people are. They have social security numbers, other identification. Barbara Davis is a fairly common name. There were probably hundreds of them in New Jersey. They narrowed it down to a couple of addresses. There's one in my neighborhood. It's not everybody. Well, we don't have anything in the record to indicate that it's the Barbara Davis, do we? We've got you saying, well, they're careful. But evidently, they're not all that careful because they also sent you to Brockton, Massachusetts, where everybody acknowledges nobody connected to the Davises lives. Indeed, nobody lives because that address is nonexistent. So I don't think you're gaining much ground by saying that. No one is perfect. Well, we can't say Full Spectrum is perfect. But, again, we're 27 months out. There's not a scintilla of evidence that the wrong Barbara Davis got it or anything like that. So that, again, and that's the address that Barbara Davis was. Did the cluster letter get returned undeliverable, just like the Brockton one did? That was unclaimed. Okay. It was unclaimed. But there's no evidence. And if I could just make those two little quick points. One is, as Judge Ambrose pointed out in the Gomez versus Oxford case last year, we do have a materiality standard in this circuit certainly since the Jensen case. And that also ties into the Spokio issue. There is no concrete injury. This is a procedural violation. It doesn't go to the content of what was in the communication. It's simply procedural. There is no injury in fact here. And whatever the injury would have been, it's immaterial. We're sitting here 27 months later, and there's been absolutely nothing that they've pointed to at any time to show there was any injury. Phelan acted in good faith with the intent to comply with the Jersey statute, to give notice, and that's all that happened. And there's no adverse consequences to anybody. There was only a communication with Albert Davis. He's the only addressee on these sealed documents. And just so I have it understood, Full Spectrum came back and said that there is an Albert Davis in Brockton, Massachusetts. A mailing address for Albert Davis. People can have mailing addresses anywhere. That's the one associated with Albert E. Davis, him. That was the last one they had. You can have somebody else get your mail, as you well know. So it wouldn't mean they necessarily lived there. Because the statute is the last known address, not the last residence. You could live in a hotel, but have your mail sent to another address. All right. Thank you very much, Mr. Deutschback. Thank you. Your Honors, I'll be brief. First, I just want to emphasize that there is no preemption for New Jersey statute over the fair foreclosure over the FDCPA. And there's no provision of this New Jersey statute that requires the mail to be sent by regular mail. Well, I didn't hear Mr. Goodkind implying that there was a preemption. I heard him say here what he said in his briefs, which is we can't be faulted for trying to reach Mr. Davis at addresses that we in good faith believed he was using. We made an effort. We weren't just shooting randomly. We hired people to find addresses for this man so that we could comply with New Jersey law. And you shouldn't read federal law. I take this as the point. You shouldn't read federal law to forbid what New Jersey law requires, unless it's absolutely clear. That's the tenor of it. What's wrong with that argument? If they did act in good faith, then that's what the subsection of 1692K provides for them to address in a defense should we get remanded. And I'm sure that that will come up. The next point that I just want to focus the court to is I do think that we're in need of guidance one way or another here as to really when we look at communication in connection with its definition under 1692A2, where it says that it is the conveying of information, is this in fact require an active form of consumption of information? Do we have to get to that? Or does this case hinge on with, not in that subsection that you just mentioned, the one defining communication, but the one associated with, was it CBA? The subsection that deals with whether you've communicated with a third party. If we were to say, for example, whether, assume this is a communication, it was not a communication with a third party because of the way it was addressed, the way Judge Kugler handled it, we would never get to the question of whether it was a communication, right? Your Honor, I do not believe that deciding this on the word with is the correct way to approach it. When we look at the other case law on the issue in regard to particularly, you know, the abundance of case law has to do with voice messages and we hear about third parties listening. So with goes to the intent of the creditor or the debt collector. And I don't think that's really the question. We look at an objective standard and we look at the definition and it says convey. So communication, was there a communication more than was there a communication with? I think you have to address both prongs of that. And I do think that it's more appropriate to view this as was information conveyed? And I believe the answer is yes. How does the, you cite the New Jersey Court Rule 1.5.4-4 for the proposition that the district court should have conclusively assumed that the letter sent by ordinary mail arrived at the intended destination. But the intended addressee was Albert Davis. So if Davis himself was the addressee, how can we assume that he received the letter? This has nothing to do with the federal statute. And, Your Honor, let me first approach this by just saying I acknowledge that the state court rule is not in any way binding on the court to accept that the mail is presumed to be delivered. It's also not helpful to you, right? I don't know. I don't know that it's not particularly helpful. If the assumption is that the mail was, in fact, delivered, the regular mail, then I believe that that is another step to showing that, in fact, the information was conveyed and a communication occurred. But it's no indication that the envelope was open. And so my question for the court is, does a debtor in Mr. Davis's position need, before bringing this case, does he have the burden of reaching out to these third parties to find out their subjective reaction, or are we going to apply an objective standard as we do? Why does it have to be a subjective standard, Mr. Deutsch? Why isn't it incumbent upon you? This gets back to the ambiguity question. Why isn't it incumbent on you to show that there actually was a communication with a third party, that is, some third party actually read this thing? And, Your Honor, that's the question. So I believe that when we look at A2 of 1692, the definition of communication, I believe that the communication occurs when the information is conveyed, and it doesn't have to be an active recipient. So with third party is superfluous? I believe that it is. I mean, otherwise, if we're getting into, it's not superfluous, but we have to accept was the information conveyed or not, because otherwise we're splitting hairs and we're getting into a situation where if a debt collector, for example, sends a letter to a person and they happen to be illiterate, do they not, has the information not been conveyed? Or if a message is left on someone's machine. Well, when you say illiterate, that really does take us in another direction. We're supposed to assume in Fair Debt Collection Act cases the sort of lowest common denominator consumer, but one that can actually appreciate some notice that's sent to them. That's part of the statute. So that doesn't seem to me to help you much. But I believe I understand your argument. Thank you. Thank you, Your Honor. Thank you. Thank you to both counsel. We'll take the matter under advisement.